SARAH P. CHAPMAN & als., *in Eq.*, v. ANDROSCOGGIN R. R. COMPANY & als.

Sections 29 to 37 of c. 76, of R. S., do not permit a sale of an equity of redemption upon two or more executions jointly in favor of different creditors.

BILL IN EQUITY to redeem certain real estate frc. a mortgage.

The bill substantially alleges that on June 28, 1853, ʒ John B. Jones, being the owner of certain land (descril ι of the value of $7000, mortgaged the same to one Chand since deceased, to secure said Jones' notes for $2000 ; tl on May 5, 1856, the right of redemption still remaining said Jones, one Lincoln, a creditor of said Jones, attach ι

said Jones' right in equity on a writ against him; that, on May 6, 1856, one Longfellow, (one of the respondents,) also attached said right in equity on a writ against the said Jones; that said writs were duly served, returned and entered, and judgments rendered thereon at Augusta, at the November term, 1857, in favor of said Lincoln, for the sum of $1164,18, and in favor of said Longfellow, in the sum of $1144,43; that executions were duly issued on said judgments on January 8, 1858, which were duly delivered to one Clark, then sheriff of Androscoggin county, who then and there, within thirty days after the rendition of said judgments, duly seized, advertised and sold at public auction, all of the right of redeeming said premises which said Jones had at the time of said attachments, to said Longfellow, for the sum of $2500, or thereabouts, he being the highest bidder at said sale, in full satisfaction of said executions, as by said Clark's return thereon; that, on March 15, 1858, said Clark, by his deed duly executed, conveyed said Jones' right to redeem said premises to said Longfellow; that, on April 30, 1859, said Longfellow conveyed one undivided half of said premises to one Edward T. Chapman, for a valuable consideration, which deeds were duly and seasonably recorded; that the complainants, (the heirs of said Chapman,) are informed and believe that the heirs and legal representatives of said Chandler duly assigned said notes and mortgage to the defendant, Abial M. Jones, who afterwards assigned the same to the defendant railway company, and that, long after said attachments, said John B. Jones conveyed said premises to said Abial M. Jones; that, on Sept. 26, 1864, said Abial M. Jones duly conveyed said premises to said railroad company, who have ever since been in possession thereof, taking the rent and profits, amounting to $1200, besides the sum expended for repairs, &c.

The bill further alleges a demand and refusal to account, a tender of the amount due on said mortgage, a demand of a conveyance of the premises, and that the complainants are the legal representatives and heirs at law of the said

Chapman. The prayer is, that the respondents may answer, come to a joint account, and that the complainants be let in to redeem, &c.

The bill was returnable at Nov. term, 1865. The answer denied the right of the complainants to redeem the mortgage, because, among other things, the attempted sale of said equity of redemption was made by a single sale on two executions jointly. The answer contained numerous other averments, which the view, taken by the Court, renders it unnecessary to report.

*A. G. Stinchfield,* for the complainants.

*S. & J. W. May,* for the respondents.

KENT, J. — The complainants seek to redeem a mortgage. The respondents deny that the complainants have any legal or equitable right, title or interest in the premises, which entitles them to claim a right to redeem. This objection is open to the respondents, and the complainants must show such right before they can compel the mortgagee or his assigns to discharge the mortgage, or release to them. *Smith* v. *Dow,* 51 Maine, 21.

The title, under which this claim is made, is derived from a sale of the equity by the sheriff of Androscoggin county, on two executions against the mortgager. The respondents set up the claim that the mortgager had no equity or interest at the time of the sale on execution, but that his equity had been before the sale conveyed to another, and afterwards, by the grantee, to them. The complainants' answer to this is, that attachments had been made, in the suits on which the executions issued, before the conveyance by the mortgager. Several questions have been made and ably argued, arising from the proceedings in making and perfecting the attachments and the sale on executions, and the acts and proceedings of parties in and out of Court, touching the premises.

There is one objection made, which reaches beyond all these matters, and involves the title of the complainants at

its very inception, and, if sustained, is fatal to the claim now made, of being the legal owners of the equity sold by the sheriff.

It appears by the return on the execution, *Longfellow* v. *Jones*, that the officer, as he says, " in obedience to the within writ of execution, and another writ of execution, R. G. Lincoln against John Smith & others," (one of whom was Jones,) " and in order to satisfy the same, I have taken the right in equity." He afterwards says : — " I sold said right in equity of redemption at public auction on the aforesaid executions." He further certifies that he applied the proceeds to the satisfaction of that execution and the balance to the satisfaction of the other execution, and that both executions were in his hands at time of taking the right in equity.

The return on the other execution is similar in all respects, except that it states that he had applied enough to pay this execution and the balance to the payment in full of the other execution.

The precise question is, whether a single, joint sale, made on two executions in favor of different parties against the mortgager, is such a sale of an equity of redemption as will pass the title. The sale is one authorized only by statute. A failure to comply with any of the substantial requirements of the statute renders the proceedings void, and leaves the title to the land unaffected. *Smith* v. *Dow*, 51 Maine, 27 ; *Jewett* v. *Whitney*, 51 Maine, 244.

The sale of an equity is authorized by statute. R. S., c. 76, § 29 to 37. This statute manifestly contemplates a single sale of a single equity, but does not authorize a sale of two or more distinct equities, together, and for a single sum. *Smith* v. *Dow*, before cited.

Does the statute authorize a sale of a single equity, on and by virtue of two distinct judgments and executions, by a single sale?

No doubt the same equity may be sold on different executions, at different times, as the same land may be levied on by different creditors. If the last attaching creditor sells the

equity, the first attaching creditors may, of course, subsequently seize and sell the same equity, and the title under the last sale will prevail over the other. And if the attachment, first in time, proves to be invalid or fatally defective, and the same equity is sold on a subsequent attachment, which holds good, the last sale will be effectual to pass the title. But can an officer, holding several executions, seize and sell the equity on all or any two of them at same sale and as one sale? The provisions of the statute seem all to point to a sale on one execution only. There are no provisions as to the mode of proceeding in case of a single sale on two or more executions. But there are distinct provisions to meet the possible and not uncommon case of a sale which produces more money than is required to satisfy the execution on which the equity or other property is sold. Ch. 84, § 21. The surplus or residue is to be applied towards the payment of other executions in the hands of the officer against the same debtors, in the orders in which attachments were made or executions served, and the residue, (if any,) to be paid over to the debtor. *Hinckley* v. *Bridgham*, 46 Maine, 456. If the Legislature had intended to give an authority to the officer to sell goods or other property on and by virtue of all the executions in his hands, either at one sale or by successive sales, they would have so declared, and would have provided a mode for apportioning the proceeds. There is clearly no necessity for such joint sale, for the law now secures all rights in a simple and effectual manner. It looks only to a single and entire sale, for a single price, on a single execution, leaving the proceeds to be appropriated in the mode and on the principles indicated. No other mode is suggested or provided for, and none is needed. The subsequent attaching creditors, or those who have delivered executions to the officers do not receive any part of the money, on the ground that the property has been sold on or by virtue of their executions, but simply on the ground that there is a sum of money in the hands of the officer which the law sees fit to

appropriate to the creditors interposing, instead of the debtor himself. But, if there are no such interfering creditors, then the residue is to be paid to the debtor.

We should be slow to introduce by construction a new and unnecessary mode, complicated and embarrassing to all parties, and not alluded to in the statute. It must be remembered that these sales are authorized only by statute, and, if not in all essential particulars corresponding with its requirements, they are void or ineffectual.

There would be great difficulties, which, if not absolutely insuperable, yet are manifest and vexatious, arising from a single sale on more than one execution.

If there had been no attachments in the suits on which the executions issued, and the seizure and sale of the equity is on them all, for one price, how are the proceeds, if insufficient to pay all the executions, to be divided? Shall it be *pro rata* according to the amount of each execution, or equally among the creditors *per capita?* The rule given in the statute has reference only to a case where the sale has been made on one execution.

If there had been attachments, at different times, and, on a joint sale on all the executions, the proceeds are not sufficient to pay all of them, is the first attaching creditor to be paid in full and the residue to be divided among the others according to priority, or how is the division to be made?

If, in the above supposed case, the sale produces no more than is required to pay the first attachment, and it is applied to that purpose, the second will receive nothing, although the equity has been sold on his execution for the sum named and a full and formal return is made thereon by the officers.

There are also serious questions which might arise directly affecting the title sold and conveyed. If the sale is made on two or more executions, the title must rest on the returns and proceedings on all.

In case of two attachments, and a conveyance by the debtor after the attachments and before the sale on both

executions, and one of the attachments proves invalid for some cause, as against a subsequent purchaser, and the other attachment holds good, and the equity is sold on both for a sum much beyond the amount of the second execution, will the title pass? What would be done with the surplus money? And the title could rest only on the return on the second mortgage. It would resemble the case of the attempt to enforce a judgment on a lien claim which included claims not covered by the lien. It has been repeatedly decided that, in such a case, the lien is lost and defeated. *Bicknell* v. *Trickey*, 34 Maine, 273. And on such execution no right can be set up under the lien, because it has been lost by the intermixing of other claims. Now, in the case just stated, the sale being made on two executions, one valid against a subsequent purchaser and one invalid, is it to be regarded as if sold on the latter only? And, if so, to whom is the surplus to be paid? The subsequent purchaser would be met by the objection that he is not a judgment creditor, and has neither an attachment or execution, and therefore not within the provisions of § 21 of c. 84.

On an examination of the statutes bearing on this question, and the manifest intention of the law makers, — considering the difficulties and embarrassments, which must arise from a construction which would allow an officer to sell an equity of redemption or personal property at one sale on an indefinite number of executions, we conclude that such a mode could not have been intended. As this decision is necessarily fatal to the whole title under which the complainants claim a right to redeem, the entry must be

*Bill dismissed, with costs for respondents.*

APPLETON, C. J. and DICKERSON, J., concurred.
WALTON, and BARROWS, JJ., concurred in the result.
DANFORTH, J., did not sit.